Good afternoon, Your Honors. Matt Pleas of Court. This case should begin and end with sovereign immunity. Absent waiver, municipalities are entitled to immunity both from the burdens of litigation and liability for money damage. The question in this case is whether the state of Mississippi has waived immunity for the criminal acts of Latavious Betts. To demonstrate waiver, a plaintiff has to do two things. One, they have to demonstrate all the underlying elements of a cause of action. And second, even if they can do that, they have to surpass additional burdens imposed by the Tort Claims Act. This case fails at both stages. The most straightforward way to resolve this case is under the duty element of negligence. Under the public duty rule, it's not enough to say that a police officer breached his general obligations to the public. There has to be a specific duty between the victim and the plaintiff. We do not look any further than the complaint in this case to see that the plaintiffs rely on generalized duty. There, they rely on Chief Long's, quote, breach of proper enforcement of the law. And then we see the record, no relationship between the victim and Chief Long. In fact, the Waltons didn't even live within the jurisdiction of Chief Long. There's no evidence in the record that he ever met them or even knew that they Chief Long could do to ever be liable for a situation like this. Not in these circumstances. Not absent a specific duty between he and the victims, Your Honor. And at 1381 of the record, Judge Aycock actually acknowledged that the decision to shoot the Waltons, there's no evidence that it was anything other than Betz's own decision. That should have resolved the case under cases like Maidens v. Gant. In that case, then Mississippi Supreme Court Justice, Judge Mills, said it was, the doctrine was consistent with longstanding Mississippi law. He relied on a case that Judge Bramlett, or that Judge Lee had decided I think a decade earlier that went all the way back to the 1940s in Mississippi law and surveyed cases throughout other jurisdictions applying the rule. At the end of the day, this really is just a federalism issue. Well, so if I could follow up on Judge Mazzan's question. He asked, and I don't know if you agree with his proposition, that there's nothing that would make Long liable. I don't know if you want to take that extreme a position. I mean, I'm sure we can imagine, maybe you can help me with this under the case law in Mississippi. Surely there could be some circumstance where he would be liable for some kind of special relationship with the victim, right? I think that's right, Judge. And I think the City of Jackson case, the recent one by the And remind me what kind of facts may be . . . That's the case where you had the dispatcher that was actually on the phone with the victim, and they said there was a breach of policy and that they had a duty to protect that particular victim because they literally had a relationship where they were on the phone. Again, in this case, there's no evidence that Long even knew these individuals existed. And so it really is just a federalism question at the end of the day. Now, there have been plenty of states that have abrogated or modified the public duty rule, but that's best done by statute. It's not within the province of the judiciary to expand the common law cause of action when the Mississippi legislature has chosen not to do so. I would also just highlight the interplay between the cross appeal that we don't think there's any jurisdiction over and the state law theory. They, of course, bring a substantive due process claim. The only two ways those are even theoretically possible are under the special relationship test under DeShaney or the state created danger theory that this court has not recognized. They've always pressed a state created danger theory, but failing to press the special relationship, that should tell you everything you need to know under state law because that's required under state law as well. But even if the plaintiff could surpass the duty element, you also have proximate causation. The general rule is that a criminal act serves as a superseding intervening force that breaks the nexus. Now, what Judge Aycock relied on was the exception from the Williams case, the propensity of violence exception. But when the Mississippi Supreme Court has recognized that exception, they did so in the context of criminal convictions. Now, I'm well aware this puts me in the awkward position of defending Betts to some degree, but the fact remains that in December of 2018, he had not yet been convicted of anything. Under our theory of justice, he's presumed innocent until . . . Well, but am I thinking about this the right way that we don't even have to get into any of that or the immunity issues, the exceptions under the statute, those sorts of things, if we simply look at what they've alleged, presuming it's a negligence claim and there's no duty or there's no proximate causation or there are intervening causes that break the chain of causation? I think that's exactly right, Your Honor, and that's actually Richardson. That's the, I think, 2022 case from the Mississippi Supreme Court, Richardson v. Rankin County. They said in that case, I think Judge Ratcliffe in the lower court had resolved it under a immunity exemption and then it got up on appeal and the Supreme Court said, we don't have to get there. They can't show duty. They can't show proximate causation, so the immunity provisions don't matter. I think we have the same thing in this case. Are we approaching Judge Aycock's determination on reconsideration that there were fact issues regarding the Chief's letting Betts out in April and letting him out in July? Do we approach that basically as we would qualified immunity? In other words, when a denial of qualified immunity comes up to us, we have to take what the district judge says as a fact dispute as granted? Yes, Your Honor, and I'm willing to give Spot Plaintiff's their best case on the fact issue. These are solely questions of law here in this particular case. Basically, what Judge Aycock relied on and I think what the plaintiffs say in their briefing is they say that long misapplied criminal procedure law under Mississippi law, but we disagree with how they interpret those provisions factually, but it doesn't matter. Those provisions obviously are in place to protect criminal defendants. Did he violate Mississippi law by letting Betts out? I don't think so. In the first, you have to take both of those as they come. Just take April. Okay. Well, I think March is when the first . . . I'm sorry. That's the one where the Justice Court judges are all off at a conference. That's right. Did he basically act unilaterally, letting Betts out at that point? Well, I think his testimony reveals that he certainly had questions over probable cause as he continued to investigate after the warrant. The way this really should have worked, if he didn't think he had probable cause anymore, he should have cut him loose with no bond at all. If he thought that there was probable cause and he couldn't get him before a judge within 48 hours, then I think he'd look to Rule 5 of the Mississippi Rules of Criminal Procedure and I think he should have imposed probably a $25,000 bond. Right. What the plaintiffs say in their briefing is that, well, it's murder, so it's a non-billable offense. That's not . . . He should have never gotten let out, period. That's their theory of the case. If he had talked to a judge, that's what would have happened? Not necessarily. I think even their affidavit of their judge says that he would have imposed a $1,000,000 bond. There's this confusion about he talked to one on the phone and basically then when the judge got back to town, the judge said, wait a minute, I wouldn't sign off on this $50,000 bond or whatever happened. It's a little confusing. I think that's right, Your Honor, and I'm willing to take their facts. What they say is that the judge signed an affidavit and said, Long called me and wanted me to waive a preliminary hearing. I said, no, you need to find another judge. The next thing I find out is that he's released on a cognizant spot. I'm fine with taking those facts. Still no relationship between Chief Long and the Waltons and also no proximate causation. Not only do you have the criminal act that breaks the causal chain, you have all these other independent factors. You have the timing issue. Any alleged negligence and the harm happened five months between the two. You have a distance issue. The Waltons didn't live in their jurisdiction. You have the fact that Long secured two indictments in September of 2018. You have the Waltons' own conduct. Olivian Walton was involved in a marijuana transaction with the shooter. Then you have the county's actions. All of these where they had the indictments that didn't serve them and they were also at the home ten minutes before the shooting occurred. Each one of these things in the case law has been recognized as independent causation breakers. Certainly, cumulatively, they matter in this case and we think they serve to break any nexus between the two events. What do we do with the cross appeal? Your Honor, there's no jurisdiction. We dismiss the cross appeal. Then what happens? Then it goes back down and then they have to reappeal because then you have a final judgment if I prevail on appeal. I understand the awkwardness of that. I mean what should have happened, perhaps, is the plaintiff should have argued some form of appended appellate jurisdiction to rope in the federal claim. That claim was never made. It's sort of iffy in the case law. Your best day here is to win on your appeal, i.e., their sovereign immunity. Right. Effectively, the district court got it right the first go-round, not on reconsideration, but your best day is still we dismiss the cross appeal, no jurisdiction. You still have to go back to district court for the district court to do what? I mean I guess do we instruct the district court to dismiss or do we just say we're sending it back, period, and we express no opinion on the federal claims? Well, I think she's already granted . . . They're dead right now. Yes. It's just not a final judgment. Right, and I think she's granted summary judgment on it and she's denied reconsideration, so presumably what happens is you go back and then we have a final judgment and there would have to be a second appeal absent this court digging into the case law and saying . . . Well, that's why I'm asking you if you've dug into the case law. I have. I'm assuming that if you had a better result, you might tell us. Usually, I'm on the other side of this. Usually, if I have an issue on state law, I'm up here saying that there's appended appellate jurisdiction argument. There are some older cases. I think Morin v. Cain comes to mind. I think it's a case out of Louisiana that perhaps there was appended appellate jurisdiction, but there have been several cases since then where this court has said, no, it's not inextricably intertwined. I think it's the standard that you have to have. There's some cases calling it a strange animal and discouraging reaching out and grabbing jurisdiction over those claims, but it does make more sense in this case because it is perfunctory in the sense that presumably if I prevail on appeal, we go back down, there's all of a sudden a final judgment and we have to re-brief these same issues that are currently before the court. I would say that if this court is inclined to get to the merits of the federal claim, my argument there is that this is a terrible vehicle for a state-created dam. We can't get there if we don't have jurisdiction, and your position is we have no jurisdiction. That's my position, Your Honor. Even if you get beyond these elements of negligence and we get into the case law of the police function exemption, reckless disregard, the plaintiffs make this argument and they say, well, we think the Tort Claims Act abrogated the public duty doctrine. We know from Strickland that that's not right. In fact, what the case law tells us is that the MTCA actually carries over the public duty rule into the case law. The cases say it's not just reckless disregard in the abstract, it's got to be reckless disregard to the specific victim, but even if you get to the median and the substantive standard of reckless disregard, that's what I think Judge Graves called it, an extremely high burden to meet for the court. We just think it doesn't apply here. You got Shavers, Collins, Fair, City of Laurel, all these cases where they're far worse facts than we have here. Some of those cases, you had a victim that directly made a report to the officers and that victim was harmed that day, and I think in one case, even ten minutes later. When you contrast that with a situation like ours where there's a five-month gap, there's intervening indictments, it just doesn't seem on par. What you really get out of the case law is this imminency requirement. The harm has to imminently flow from whatever the tortious activity is and that's what's missing here. It's not enough to say there's an officer had probable cause to arrest. The case law makes clear that's not right either. We think there's multiple grounds here. Most straightforward one seems to be public duty rule, but there's alternative paths as well. We would ask that this court reverse the denial of immunity and reinstate it for my client. Thank you. Thank you, counsel. You'll have time for rebuttal. Mr. Cooley. Counsel, can you start and explain to me what the tort claims that are being asserted and then what duty was here? The tort claims would be negligence and negligence per se, Your Honor. The duties that would flow from that are integrated with the MTCA. The MTCA is the only means by which an individual in Mississippi can bring a claim against a law enforcement officer. That doesn't create any right. I mean, that's just a burden that the plaintiff has to get through to get to sue, but there still has to be a duty under the law. I agree with you that there has to be a private right of action. The Mississippi Tort Claims Act doesn't specify what private rights of claim, doesn't just delineate which ones they are, which ones you can't bring, but in this case, we would assert that we brought a negligence and a negligence per se claim. Again, what's the duty? The duty would be in this situation . . . Chief Wally just had the obligation to generally protect the public, but that doesn't get you to a cause of action. Well, it's not necessarily the duty to generally protect the population. Here we have a distinct and separate interest that the Waltons have in connection with Betts and connection with J.B. Long that they overlook. The Gantt v. Maness case was the first real case in Mississippi to really address this issue. While the judge in that case did say it's long-standing precedent, if your clerks or anybody in this room Googles or Westlaw checks public duty doctrine, there are only about five cases that come up in Mississippi. When you look at the Gantt v. Maness case, there are . . . and the case law on public duty doctrine across the land, there are numerous exceptions that aren't fettered out and it's not the judiciary's job to go through for the legislature and fetter out what those exceptions are, but . . . Are you saying there's an exception to the public duty doctrine that applies here? Yes, Your Honor. I do believe there is. Which one is that? I think it's found in Gantt v. Maness. In Gantt v. Maness, the court gave six delineating factors that would . . . that she could have been able to establish that she could have taken herself outside of a general duty to the public at large. Those were, did she know the inmate that hit her? Had she ever met the inmate that hit her? Had she ever spoken with the inmate that hit her? Had she had any knowledge of that inmate's criminal record and had she ever been in court with that inmate and had she ever testified against him? Those were not and factors, they were or factors. When you look at this case and specifically with Betts and you go to the record of appeal at page 616, you'll find an offense report from 2016 in Lee County where Betts and Ms. Annie Walton, deceased, did have an interaction where he was trespassing on her property. With that, she did know him. She had met him. She had spoken with him to know he was trespassing on her property and she would have at least knowledge of that criminal record. Did Long, the chief, know any of this? It was in his investigative file. That's where that comes from. We didn't put it in the record. He put it in the record from his investigative file. So it's something that he could have known. You're going to hold a police chief or a police officer accountable for every interconnection in a small town in Mississippi and every interaction that may or may not have happened between people before some tragedy like this unfolds? Not in every situation, Your Honor. Where do we draw that line? I think you draw the line at violent offender. If you have a violent offender, I think you have to factor in all the aspects of the victims that he's came in contact with because at that . . . So all the people at the Chevron can have a claim as well, just like the Waltons, the second shooting? I wouldn't go quite that far, but yes. How not? I think that they possibly could. They possibly could? If they would have asserted it, yes. Even though he hasn't been convicted of anything from the March shooting? It doesn't have to do with convictions. It has to do with propensity. So we're going to presume a propensity? Well, you don't have to presume a propensity when you see him on video shooting people. That was at the Chevron shooting? That was at the Chevron shooting, yes. All right, but you just said all those folks already had a claim against him, against Chief Long, because Chief Long let him out in March. Well, they wouldn't have had a claim against him in March because that hadn't happened yet. No, they would have had a claim against him by the time he showed up in July and started shooting at the gas station. It depends on which people we're talking about. If he's shooting at the people at the gas station, the people at the gas station wouldn't necessarily, those people would have a claim. The people that he shot at earlier, if he was in fact the shooter, he shot at Jaskin Green and killed Jaskin Green. I don't think he shot at anybody else. Jaskin Green's estate would have had a claim, just like the Lewaltons did if they would have erased it. I don't think that they wouldn't have. I think that they very well would have. Each one of those individuals, because we talked about earlier about is there anything that Chief Long could have done that would have made him liable. I think what he did makes him liable because what we have here is we have a unique situation where . . . It seems like any police officer or chief of police who does an investigation, this would allow liability for anyone who makes a mistake. I'm not saying there's not errors when you look at what he did objectively, but the law doesn't usually impose a duty on a police officer or a chief of police to be liable for every little mistake they make. I don't think these are just mistakes. This isn't a mistake of paperwork. It wasn't something intentional, was it? I think knowing that it hurt to allow Betts out so he would shoot somebody else . . . I don't think he intended that Betts was going to shoot somebody. I'll agree with you there, but he knew what he was doing when he let him out. He didn't have authority to release a murder suspect by statute, 99-511, a murder suspect on a recog bond. Even if there's no probable cause? Even if there . . . He already had probable cause. But even if he feels like probable cause didn't pan out? That is a red herring. There is nothing in the record to show that probable cause dissipated. The statements . . . Well, he had conflicting statements from the witnesses in March that suggested somebody else did the shooting. But that was before he was arrested. More statements came out in April while he was being investigated that further supported and pointed at Betts. The only contradiction there was the alibi that he talked about. How do you get beyond what counsel opposite said that this becomes a very simple case if you can't show proximate cause and you can't get around the intervening causes that occurred?  How so? There are two elements. You have the but-for and the foreseeability. What about the temporal proximity? Let's talk about that first. In a drug case, if I get harmed by a pharmaceutical company after ingesting their drug, do I have to immediately file a cause of action? Well, no, no, no, but give me your case that shows something even akin to what happened here where five, six months go by before the actual harm occurs. Well, the only cases that would present that would be in situations where there is a drug or a product or some type of . . . Those are latent harms, right? Not necessarily. I mean, a product when it comes out can be defective and not harm someone until months later or even years later. Okay. So we get around the temporal proximity with drug harm cases or products cases. Well, I would also argue that temporal proximity would have to have been one of those situations that would have been brought before the district court. We talk about proximate cause and the months and the times, but you still look at the but-for issue. Even if it is two months, five months, ten months, twelve months down the road, had Long not done what he did, this would have never happened. All right. Well, had the Lee County Sheriff's Department arrested him when the Well, that's a good point, but that comes into . . . Correct or not correct? I would say not correct because . . . Okay. So they had a couple months after the KPSs were issued and he was indicted by the grand jury, if I recall right, and they didn't pick him up in the intervening two months. How in the world would that not be the proximate cause? Because it wasn't their fault that he wasn't arrested to begin with. Okay, but it was their fault that they didn't . . . So basically, the Waltons could proceed . . . well, they did proceed, I guess, against the sheriff. We did. We did. You settled that. We did. Well, so how is it . . . It's more of an apportionment of fault issue. Sorry? It's more of an apportionment of fault issue. Okay. We're not really talking about . . . They both had duties and what the Lee County deputies did or didn't do didn't . . . I agree. . . . cause the issue. And Betts has culpability too, but these are all . . . Well, also your client has culpability, right? Because the next superseding cause I would ask about is if Mr. Walton had not smoked pot with Betts and or paid for the pot that he allegedly smoked, they wouldn't have come . . . he wouldn't have come over to shoot up the house. It's possible. How is that not an intervening cause that doesn't break the chain of causation? Because if someone has a propensity to commit a violent act . . . Well, you say that in your briefing. You talk about Chief Long letting this violent offender out to roam the free world shooting up people. That's completely at odds with a duty to the Waltons. I don't understand how that's completely at odds with a duty to the Waltons. Well, it sounds like you're talking about a general duty. Well, I never said that he was out roaming the world. I don't believe. I think we focused that on the fact that he . . . Well, he released him into the free world. You said something like that a couple different times. And I believe I said without trepidation. And the issue with that is that here . . . that goes back to those six factors we were outlined in Manus and the exceptions to the public duty doctrine where the law would indicate that the public duty doctrine is probably supplanted by the MTCA. But I'm just talking about a negligence claim. You said negligence claim, negligence per se. Under that, we would operate under Wilker. But how is it, if Mr. Walton had not smoked pot or smoked weed that Betts gave him, or if he paid for it . . . I mean, I'm just going by the allegations and what's in the record. Would Walton . . . I mean, would Betts have shown up to shoot up the house? I don't know. What happened at the Chevron station? What evidence is there? What evidence is there that he would have? I don't . . . Regardless? I don't think there's any evidence either way. I really don't. I think we have a disturbed individual that was going on a concerted rampage of shootings. And it started . . . But not all targeting the Waltons. Not only targeting the Waltons. I would agree with you. You're talking about a general propensity for violence. Yes, Your Honor. And a general proclivity to go shoot up people. Yes, Your Honor. And somehow, that inures to the specific duty, long, chief, long, ode to the Waltons. Well, I think we're talking about two different things. Proxy . . . I think we are, but I can't get to where you're wanting to go because I don't see the specific duty. Well, the specific duty is negligence in not following the law.   Well, the specific duty is negligence in not following the law. And that goes back to the MTC . . . Well, you're . . . The way it's framed on its elementary level, it would be the duty to all. But, if you can separate the duty to all with those factors outlined in Manis, then it's a duty to the Waltons, not just a duty to all. And so here, because they did know him, because they did have these interactions to which you're referring to, that would separate them and give them a distinct and separate interest from the public itself. Now, the duty still flows from the general duty. That doesn't change. What changes is, is that they have a separate and distinct interest, and that's in the Manis case. It outlines that and says, if an individual can show a separate and distinct interest, then that separates themselves from the general populace, which would be under those six factors, then the duty is owed to them. And so, if Ms. Manis would have had or been able to satisfy those particular factors, then she would have. But, I would like to get back, since we're on the public duty doctrine, I would like to assert that in their brief, in their motion for summary judgment at the record at page 424, there's only one paragraph about duty before the district court, and it doesn't mention the public duty doctrine. The public duty doctrine is raised for the first time on appeal. It was never raised in an answer. Well, let's be clear. They raised the issue of duty, that there was no duty. Your Honor, they may say there's no duty, but we're doing apples to oranges. Okay, we're both fruits, but we're two different fruits. Well, it still comes out of the issue that I think Judge Wilson and I have asked about is, where's the duty that applies, not to the general public, but to the Waltons? Well, like I was saying earlier, the duty still flows from the general, but if they can separate themselves distinct and separate, the duty is owed to them. It's like a crime victim. If you know you have a crime victim and you have to, before you release an inmate, you have to give that victim notice of the inmate's release. It's something very similar and akin to that. Not only does the public duty doctrine not apply for that reason . . . But the inmate's been convicted. That's true. The inmate has been convicted. The inmate's serving time. He's in state custody. That is all true, but we can't get around what the court said in Williams. What the court said in Williams, they didn't go on convictions. They went on general propensity alone, and that was the case where Walmart sold the kid to ammunition and he goes out and murders his mother's boyfriend. Now, it goes on propensity alone, not convictions, and if we had to go on a conviction, he ultimately was convicted, I believe, for the shooting at the Chevron station. That's not in the record, though, is it? I don't believe any of that's in the record, Your Honor. Just like the fact that he doesn't have any convictions is not in the record, either. What do we do with your cross-claim? Do we have jurisdiction or no? You know, I honestly think you don't have jurisdiction over any of this. And the reason why I don't think you have jurisdiction over their appeal or my appeal is based on the fact that it's so intertwined with questions of fact. Well, so wait a minute. The denial of immunity is an immediately appealable . . . I'm talking about qualified immunity. It's an immediately appealable order. The denial of sovereign immunity under state law would be treated similarly, correct? Correct. All right. But the grant of immunity, not appealable. Correct. All right. So, the denial of sovereign immunity here on the motion to reconsider would fall in that first bucket. In other words, it would be appealable. Not necessarily, Your Honor, because there are several cases from the Fifth Circuit, Piatt, Palmer, Petta, and several other ones that distinctively say that when there is an issue of fact . . . That is the basis . . . Counsel, you know, I will tell you that as a trial judge who recently found a hard way on this very same issue, the Fifth Circuit enlightened me on this as well, is that these are legal questions that are being raised, not factual questions. Yes, we can't touch the factual questions. We have to look at that in terms of the facts that happened. But everything the appellant said in their argument are legal questions. They didn't raise factual issues. We accept the facts, the issues, and we can't disturb those for purposes of the appeal. But that does not take away the jurisdiction to the party to appeal a denial of sovereign immunity. And again, I've learned the hard way, so I'm very well aware of this just recently. Because I made the same argument in one of my orders that you're trying to make right now and was rebuffed. And so, it was very educational for me. I wish this case had come sooner, about two months ago for me. So, I would have made probably a different decision on my other case. But again, these are legal questions that are being asserted by the appellant, not factual issues. Proximate cause and duty are legal questions, Your Honor. I don't disagree with you. So, why would that . . . why wouldn't we have jurisdiction to consider those? Because the facts matter. Well, but they matter to the extent they're material. I mean, to Judge Mazzon's point, we can't review the genuineness of a fact dispute found by the district court on a qualified immunity appeal. And I'm just going to conflate sovereign immunity under state law and federal qualified immunity. So, we can't review genuine disputes of fact, but we can review whether those facts or disputes are material. I agree with you. How is anything . . . if proximate cause is the issue, if duty is at issue, intervening cause is at issue, it really doesn't matter what the district court found here on reconsideration, that there were these fact issues in March and July. They're not material. Well, they would be material . . . Or if they are material, whether they are or are not, we can squarely reach that question. I would say the materiality of them relate to the various duties and the standards of care that are outlined through the MTCA itself. I know that's not a private right of action, but you cannot avoid looking at what the MTCA says and the standards that it imposes. For ministerial duties, following these statutes for bonds and these criminal rules of procedure for how someone bonds out of prison is a ministerial duty. Back to . . . I'm sorry to interrupt, but we're running short on time. What about your cross appeal? Are you conceding that there's no jurisdiction for us to reach it or what? I filed that appeal out of an abundance of caution and I highlighted that throughout my notice of appeal and throughout my briefing. Your Honor, I would concede that if the court denied . . . what I filed it for is the judicial economy issue that you guys presented earlier. If you send this back to the district court, that I have to file a federal appeal within thirty days on my federal claims or I guess appeal my federal claims. Your position mirrors counsel opposite that we really don't have a choice but to dismiss for lack of jurisdiction the cross appeal. I mean, I think that you dismiss it, but I have to refile it. Go ahead and touch it. It goes back to the district court for further proceedings and the district court does whatever . . . I don't know what those further proceedings would be because she's already ruled twice that the federal claims didn't have any merit to them. Now, I would address that with that federal claim she was wrong with abuse of power. We can get into the state credit danger doctrine, but I will know that you guys know that that's not a viable doctrine in this circuit. It's viable in other circuits, but it's just not viable in this one. I won't waste the remainder of my time with that. What I will go through is the abuse of power. Just because a claim has the same effect does not mean that they don't have a claim. Their abuse of power claim, they meet all the elements for that. I don't disagree. It has the effect of holding Sheriff Long . . . or excuse me, Chief Long and the city responsible for Betz's actions, but does it? No. It holds Chief Long and the city responsible for Long's actions that resulted in what Betz did. We're getting . . . on the abuse of power claim and just letting that go, we get the cart before the horse because we focus on the damage. The damage was Annie Walton's death and the shot that Alvin took in the leg, but just because . . . and we're not holding Long responsible for Betz going and shooting these people. We're holding Long responsible for not following the correct procedure. For abuse of power, they do have a meritorious claim and it should not have been just dismissed summarily without going through each of the elements of that claim. Thank you, Counsel. Mr. Butler, you have some rebuttal time. May it please the Court. Thank you. Just briefly, I'll begin with a factual point. My friend on the other side mentioned the 2016 trespass complaints by the Waltons against Betz. I think he said that it came from Chief Long's file. If you look at the record at page 1008, that came from the Sheriff's Department. What he may have meant is that I may have produced it in discovery, but that document clearly shows that it was a complaint to the Sheriff. There is no evidence in the record that he knew these individuals at all. On the discussion of Manus, there is no six-factor test in Manus. What there is is a paragraph at the end of that opinion that explains why there is no relationship between either the victim and the criminal perpetrator or the victim and the defendant in that case. What Manus did was reject the precise propensity theory that Judge Aycock relied on. You have to remember in that case, you had a DUI third person who was in jail and released and he went out, got drunk again, and hurt someone else. That's the exact kind of propensity that Judge Mills said doesn't count. As far as it being the MTCA doing away with the public duty rule, again, the very fact that Manus is a post-MTCA case tells us that that's not right and it's reaffirmed by the court's recent decision in Strickland. Judge Wilson, you mentioned approximate causation a few times. One of the line of cases that I think makes sense here is you have these cases under Mississippi law where you've got a criminal statute that says car owners can't leave their keys in the car. Then you have these factual scenarios where a thief steals the car, injures a third party, third party sues car owner. In all of those cases, I think back in the 50s and then reaffirmed by the Supreme Court in modern day, they say, yeah, he may have violated a criminal statute, the car owner, but there's no approximate causation there because there is no reasonable foreseeability. That's really similar to what the plaintiffs are trying to do here. They're trying to rely on these criminal procedure rules that are in place for criminal defendants and somehow create a duty for the general public and that's just not allowed under the public duty rule. Just briefly on the waiver issue, we didn't give it the fancy name of public duty rule in the briefing, but these were supplemental to the federal law causes of action. Again, the irony in that argument is there wasn't a negligence claim brought in the complaint at all. The defendant certainly didn't have a duty to defend a claim that wasn't even brought, but we anticipated it and we made that argument in the opening brief. They responded, we replied, and it does matter that we are the defendant. All we had to do at summary judgment was point to an absence of evidence. We certainly did that and more. We specifically said that there's no duty for a criminal act and we specifically said there was no proximate causation. We would ask this court to render judgment in favor of the city of Verona and grant immunity to them. Thank you, Your Honors. Thank you, counsel. The case is submitted.